**CITY OF BARTLETT,
Plaintiff–Appellee,**

v.

**Franklin SANDERS, Defendant–
Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Nov. 7, 1991.

Permission to Appeal Denied by
Supreme Court March 16, 1992.

Franklin Sanders, pro se.

Christopher L. Nearn, Bartlett, for plaintiff-appellee.

CRAWFORD, Judge.

This case involves a prosecution for alleged violation of city ordinances. Defendant, Franklin Sanders, was charged with violating City of Bartlett Ordinances 21–0301, 21–0302, 21–0303 and 21–0304. After an adverse ruling in the Bartlett City Court, Sanders appealed to the circuit court for a trial *de novo* and demanded a jury. Judgment was subsequently entered on a jury verdict finding Sanders guilty of violating the Bartlett City Ordinances and assessing his fine at $50.

After entry of the judgment on the jury verdict, Sanders filed motions titled, "Motion for Relief From Judgment" and "Motion to Alter Judgment." Rule 3, T.R.A.P., provides that no issue predicated on an error as a ground for a new trial shall be considered by this Court unless specifically stated in a motion for a new trial. For the purposes of this appeal, we will treat the two motions filed by Sanders as a motion for a new trial. From a review of the motion, we perceive the only available issue for review on appeal to be whether the trial court erred in refusing to grant Sanders' motion for a directed verdict at the conclusion of all the proof.

A review of the transcript reveals that at all pertinent times there were in full force and effect the following duly enacted ordinances of the City of Bartlett:

21–0301

### ASSESSMENT OF PRIVILEGE TAXES

There is hereby levied on all vocations, occupations, and businesses declared by the general laws of the State to be privileges taxable by municipalities, an annual privilege tax in the maximum amount allowed by said State laws. The taxes provided for in the State's "Business Tax Act" (Title 67, Chapter 58, TENNESSEE CODE ANNOTATED) are hereby expressly enacted, ordained, and levied on

the businesses, business activities, vocations, and occupations carried on within the municipality at the rates and in the manner prescribed by the said Act.

Ordinance 74–6, Section 1, March 26, 1974.

21–0302

## CITY'S RIGHT TO PRIVILEGE TAX INVOKED

Each vocation, occupation or business conducted, operated or carried on in the City of Bartlett, and declared by Chapter 108 of the Public acts of the General Assembly of the State of Tennessee of 1937, known as the General Revenue Law, and all Acts amendatory thereof, is hereby declared to be a privilege for the City of Bartlett, and the rate of taxation on each such privilege for any year shall be that specified in such legislative acts, and all the definitions, terms provisions, classifications, rights, powers and levies made, imposed and authorized in such General Revenue law, and all Acts amendatory thereof, for cities, taxing districts and municipal corporations, are hereby ordained and adopted by the City and made a part of this Ordinance as if fully copied herein for and on behalf of the City.

Ordinance 67–4, Section 2, October 17, 1967.

21–3030

## BUSINESS LICENSE REQUIRED

There is hereby levied on all vocations, occupations, and businesses declared by the general laws of the State to be privileges taxable by municipalities, an annual requirement to have and exhibit a Business License, except those professions exempt by the Tennessee State Code. This License shall be issued by the City Clerk to each applicant therefore upon such applicant's compliance with all regulatory provisions and payment of the appropriate privilege tax.

Ordinance 76–6, Section 2, July 13, 1976.

21–0304

## PENALTY FOR FAILURE TO PAY PRIVILEGE TAX

Any person, firm or corporation which carries on any vocation, occupation or business herein declared to be privileged and taxed as such, without paying the tax herein provided, shall be guilty of a misdemeanor and on conviction thereof shall be fined not less than Five ($5.00) Dollars nor more than Fifty ($50.00) Dollars and each day's violation shall be deemed a separate offense. The payment of any fine levied shall not excuse the payment of the tax herein levied.

Ordinance 67–4, Section 1, October 17, 1967.

These ordinances are authorized by T.C.A. §§ 67–4–704 (1989) and 67–4–706 (1991 Supp.). Section 67–4–704(A) provides:

... [T]he making of sales by engaging in any vocation, occupation, business or business activity enumerated, described or referred to in § 67–4–708(1)–(3) is declared to be a privilege upon which each county and/or incorporated municipality in which such business, business activity, vocation, or occupation is carried on may levy a privilege tax....

Every person taxable under an ordinance enacted pursuant to T.C.A. § 67–4–704 is required before engaging in business to register with the city official charged with tax collections. T.C.A. § 67–4–706(a) (1991 Supp.).

The business of selling coins and other tangible personal property is explicitly declared a privilege taxable by municipal government. T.C.A. § 67–4–708(3)(A)(xi) (1989) and § 67–4–708(2)(F) (1989).

Sanders moved into leased office space within the City of Bartlett in April, 1986, and maintained the office at all pertinent times. A listing appeared in the South Central Bell "Yellow Pages" advertising Sanders as a "coin dealer" at his Bartlett office address. Evidence was introduced at trial of at least one transaction which occurred in that office in 1986, when Sanders delivered 10 South African Kruggerands to Solon Freeman in exchange for

$4,285.00. It is uncontroverted that Sanders neither applied for a city business license, nor did he pay any privilege taxes from the time he leased the Bartlett office until the city brought the charges against him. Stephen Smith, the director of finance for the city, testified that he wrote Sanders a letter directing him to comply with the ordinances, but Sanders failed and refused to do so. This precipitated the action against him.

Sanders testified that he did not order or authorize the telephone listing in the "Yellow Pages" and that he had requested the removal thereof. He states that he is not a coin dealer, but was engaged as a publisher and a money changer. He defines a money changer as one that changes different forms of money among others so engaged. For Sanders explanation concerning his transactions, we quote from the record:

Q. Isn't it true that Mr. Freeman bought Kruggerands from you for his money?

A. No.

Q. What did he do?

A. He sold me [federal reserve] notes, and I gave him the gold money.

Q. Isn't it true that Mr. Walters purchased a peso from you for his business, his jewelry business, and he paid you in cash.

A. No, he sold me [federal reserve] notes, and I paid him in peso money, gold money.

\* \* \* \* \* \*

We will now consider Sanders' issue of whether the trial court erred in refusing to grant his motion for a directed verdict at the conclusion of all the proof.

■ The rule for determining a motion for directed verdict requires the trial judge and the reviewing court on appeal to look to all of the evidence, taking the strongest legitimate view of it in favor of the opponent of the motion and allowing all reasonable inferences from it in his favor. The court must discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Potter v. Tucker*, 688 S.W.2d 833 (Tenn.App.1985); *Tennessee Farmers Mutual Ins. Co. v. Hinson*, 651 S.W.2d 235 (Tenn.App.1983). A verdict should not be directed if there is any material evidence in the record that would support a verdict for the plaintiff under any of plaintiff's theories. See *Wharton Transport Corp. v. Bridges*, 606 S.W.2d 521 (Tenn.1980).

■ Sanders asserts that he is a "money changer" and is not engaged in the business of selling coins. He contends that money changing is not a privilege taxable by the city under the state law.

The dispositive issue is whether there was evidence that Sanders engaged in the business of selling coins during the period of time involved. T.C.A. § 67–4–702(1) defines "business" as "any activity engaged in by any person, or caused to be engaged in by him, with the object of gain, benefit or advantage either direct or indirect." Excepted from this definition are "occasional and isolated sales or transactions by a person who does not hold themselves out as engaged in business." In the instant case, proof was introduced that Sanders was listed in the classified section of the telephone book as a "coin dealer" with a business address. It was true that he had a business address separate and apart from his home and that he engaged in the transfer of Kruggerands for U.S. currency. Under this proof there was material evidence to go to the jury on the issue of whether Sanders was engaged in the business of selling coins.

Sanders also argues that he really acts as a money changer, then, on the other hand, he argues that he did not sell Kruggerands, but merely purchased Federal Reserve Notes by paying for them with Kruggerands. He asserts that only gold and silver coins can be lawful money in Tennessee by virtue of Article I, Sec. 10, Constitution of the United States, which provides that "no state shall ... make anything but gold and silver coins a tender with payment of debts." He argues that when he exchanged the gold Kruggerands for $4,285.00 in Federal Reserve Notes he

was purchasing intangible personal property (the notes) in payment in the form of gold coins. What Sanders fails to acknowledge is that Congress has the power under Article I, Sec. 8, of the U.S. Constitution to establish a uniform legal tender for the payment of debts. *Julliard v. Greenman,* 110 U.S. 421, 4 S.Ct. 122, 28 L.Ed. 204 (1884).

31 U.S.C. § 5103 states:

§ 5103. Legal tender

United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts. (Emphasis added).

Kruggerands are gold coins minted by the government of South Africa which contain one troy ounce of gold. They have no face value, but are sold by weight according to the market price for gold bullion. *The Standard Catalog of World Coins,* p. 1600 (C. Krause, C. Mishler & C. Bruce, II, eds. 1991). They are not listed as an official coin of currency in South Africa. *The Stateman's Yearbook,* p. 1096 (B. Hunter, ed. 1991). Even if Kruggerands were official coins of South Africa, they are not legal tender for debts. 31 U.S.C. § 5103.

■ Sanders also argues that he cannot be liable for the business tax because there is no written contract or other agreement where he agreed to pay such an amount to the City of Bartlett. This argument is completely without merit. As we have previously noted, there was evidence that Sanders engaged in business taxable under the ordinance. In 1990, our Supreme Court laid to rest any question concerning the status of proceedings concerning the violation of municipal ordinances. In *City of Chattanooga v. Meyers,* 787 S.W.2d 921 (1990), the Court said:

In summary, for 130 years, proceedings to recover fines for the violation of municipal ordinances have been considered civil for the purposes of procedure and appeal, although the principles of double jeopardy have recently been determined to apply in such cases. (citations omit-

ted) ... The basis [of this reasoning] is that an appeal to circuit court of a judgment of a municipal court—even when the defendant is the appellant—is an appeal in a **civil action brought by the municipality to recover a "debt."** (Emphasis added)

787 S.W.2d at 928.

The judgment of the trial court is affirmed and the case is remanded to the trial court for such other proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.