Edward L. CARRUTH,
Plaintiff/Appellant,

v.

The CITY OF ETOWAH and, Billy Bivens and Zendall Baxter, Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Aug. 3, 1994.

Application for Permission to Appeal Denied by Supreme Court Jan. 3, 1995.

John W. Cleveland, Cleveland & Cleveland, Sweetwater, for plaintiff/appellant.

H. Chris Trew, Higgins, Biddle, Chester & Trew, Athens, for defendants/appellees.

FARMER, Judge.

Appellant, Edward L. Carruth (Carruth), appeals from the judgment of the trial court directing a verdict in favor of the Appellees, the City of Etowah (City), Billy Bivens (Bivens) and Zendall Baxter (Baxter).

The events giving rise to this lawsuit are as follows: On April 15, 1991, Carruth's birthday, he and his uncle, Jessie Carruth (Jessie) spent the major portion of the day repairing the plumbing at a rental home owned by Carruth's mother. At approximately 3 p.m., Carruth began drinking vodka. Between 7 and 9 p.m., Carruth and his uncle went to his "apartment,"[1] owned by his mother. They had "a few more drinks." Carruth received a phone call from his fa-

---

1. Carruth testified that the apartment was actually a two-story house in which he occupied the upper part. At the time of the incident, he had been a resident for approximately eight (8) years

ther, resulting in a "heated argument." Carruth then decided to drive to Lenoir City to see his father. Jessie attempted to prevent Carruth from leaving and an altercation between the two ensued. Their scuffling caused a storm door glass to shatter and furniture to be knocked to the floor. At approximately 10 to 11 p.m., the two were "wrestling around on the floor" when police officers Bivens and Baxter arrived. The officers informed Carruth that they were there pursuant to a phone call they had received from Carruth's mother. The officers entered the premises and stated that Carruth had three choices: he could either go home with his uncle, his uncle could remain at the house with him or he could go to jail. Carruth left the house with his uncle to travel to the latter's residence in Polk County. In route, Carruth jumped out of the vehicle and started running in the direction of his home. He was discovered by Baxter and another county officer near his home in an alley. He was arrested for public drunkenness and disorderly conduct and taken to the McMinn County jail. Carruth was subsequently found guilty of the charges.[2] His employment as a law enforcement officer at the McMinn County Sheriff's Department was terminated.

In April 1992, Carruth filed suit against Appellees alleging unlawful arrest, false imprisonment, outrageous conduct, intentional infliction of emotional distress and a violation of his civil rights pursuant to 42 U.S.C. § 1983. The complaint alleges that Appellees conducted an "unlawful warrantless search" of his apartment and unlawfully arrested him. It was further alleged that the "order" to get out of town was unlawful and unconstitutional.

In directing a verdict for Appellees, the trial judge stated:

and lived there at the "pleasure and discretion" of his mother. He stated that he was allowed to live there in exchange for maintaining the premises.

2. The record reveals that Carruth appealed the conviction to circuit court. The charges were

But I have to state that [Carruth's] condition and state of mind on April 16, 1991 was such as to make him a menace to himself and to society, and that he should have been taken into custody as he was, and there was no violation of his civil rights....

The issue presented for review, as stated by Appellant, is as follows:

Whether the Defendants unlawfully seized Plaintiff's home, unlawfully evicted him, unlawfully banished him and unlawfully arrested him, all without probable cause and without due process; therefore, trial judge erred in directing a verdict dismissing plaintiff's cause of action for unlawful arrest, false imprisonment, outrageous conduct, intentional infliction of emotional distress, and for damages and other appropriate relief under 42 U.S.C. § 1983 for violation of the Plaintiff's federal civil rights.

■■■ In ruling on a motion for directed verdict, the trial court and this Court must take the strongest legitimate view of all the evidence in favor of the motion's opponent and allow all reasonable inferences from it in his favor. We must discard all countervailing evidence and if there remains any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, we must deny the motion. A verdict should not be directed if there is any material evidence in the record to support a verdict for the plaintiff under any of his alleged theories. *City of Bartlett v. Sanders*, 832 S.W.2d 546, 549 (Tenn.App. 1991).

At oral argument, counsel for Appellant conceded that the City is immune from liability as to the state law claims.[3] As to the Section 1983 claim, Appellees direct our at-

ultimately dismissed on grounds other than the merits.

3. T.C.A. § 29–20–205(2) of the Governmental Tort Liability Act states:

Immunity from suit of all governmental entities is removed for injury proximately caused by a

tention to the United States Supreme Court decision of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* holds that a municipality cannot be held liable under Section 1983 on the theory of respondeat superior. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. The Court states that, "[i]nstead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38.

■ The Chief of Police of Etowah, Robert Richardson, testified that the City does not have a policy regarding asking citizens to leave town as an alternative to arrest. He stated that it was the policy and custom of the City to arrest "in every case" persons violating the law. He was asked, "[a]nd if an officer encountered a citizen who was not violating the law, it was not the custom or policy of the city to ask that person to leave their home or the city," to which he replied, "[n]o, I never did. I don't know about other officers.... I never asked anybody to leave." Officer Bivens testified, by deposition, and was asked, "[h]ave you all ever been encouraged to try to work things out with the citizens when you can without arresting them by the city manager or commissioners, mayor or any other officials?" Bivens answered, "[n]ot specifically, no, sir." Bivens continued:

> Generally when an officer is hired the mayor, commissioner, and city manager leave it to the officers to do their job within the scope of the law or however they see fit or mediate or whatever and get that job done....

> But we're not dictated to or suggestions are not made. They're just—the mayor and board of commissioners really don't

have any involvement in the police department.

We find the record devoid of any evidence suggesting a policy or custom that the officers were following when taking the aforementioned actions. We hold that no verdict could have been entered in favor of Carruth as to the Section 1983 claim alleged against the City and conclude that the trial court correctly directed a verdict in its favor.

■ We now turn our attention to the allegations against the individual officers. On appeal, Carruth contends that the officers unlawfully searched his home, unlawfully evicted him from his home, and unlawfully arrested him "after forcing him from his home where he was not guilty of any crime into the public to create the elements of the offense."

Both Carruth and his uncle testified that the officers gave Carruth the choice of remaining in his home with his uncle present. Jessie Carruth testified that he offered to stay at his nephew's home. On cross-examination, Carruth testified that his level of intoxication was probably "in that area" of .10. He stated that he was more intoxicated than his uncle and could not state whether his uncle was "drunk." Carruth also attempted to take a hand gun with him upon leaving his home to which his uncle objected. Carruth stated that neither officer placed him under arrest in his house.

Jessie Carruth testified that he was concerned about his nephew's ability to operate a motor vehicle and stated that, in his opinion, "there's no way he could have made it from his house up there without endangering his life or somebody else's." Jessie stated that he had had two drinks "prior to the fight." He testified that he called Carruth's mother and asked her to call the police and get some help. He stated that he did not want Carruth to be left alone "under any

---

negligent act or omission of any employee within the scope of his employment except if the injury:

  ....

  (2) Arises out of false imprisonment pursuant to a mittimus from a court, false arrest, mali-

cious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights;

circumstances" that evening. Jessie further testified that it appeared that the officers were just trying to help Carruth.

Doris Carruth testified that she called the police pursuant to a phone call she received from Jessie. She asked them to go to the house and check on her son. She later talked by phone to Baxter, Bivens and Jessie while they were at the house. Mrs. Carruth stated that one of the officers asked her what she wanted done and she told him "if they felt like he'd been drinking too much to try to make them stay there or make him go with Jessie ... or to get him to cooperate." She also told them to take him to jail if he would not cooperate.

The court in *McKenna v. City of Memphis,* 785 F.2d 560 (6th Cir.1986), held: "[u]nder the current interpretation of § 1983, that statute is applicable at best to provide a remedy for due process claims when one acting under color of state law intentionally inflicts an injury or acts with gross negligence or reckless disregard of the rights of an injured party." *McKenna,* 785 F.2d at 562. Considering the actions of Carruth, leading the officers to believe that future harm could have been done to him or other innocent persons, and the request made by Carruth's mother, we find that the officers acted reasonably under the circumstances and did not violate Carruth's constitutional rights as a matter of law. Furthermore, we do not find the evidence to reveal that Carruth was forced out into the public by the officers, but that he, of his own accord, chose not to stay at his home with his uncle present.[4]

T.C.A. § 39–17–305(a)(1) states: "[a] person commits an offense who, in a public place and with intent to cause public annoyance or alarm: Engages in fighting or in violent or threatening behavior;" T.C.A. § 39–17–310(a) defines public intoxication as where one "who appears in a public place under the influence of a controlled substance or any other intoxicating substance to the degree that: (1) The offender may be endangered; (2) There is endangerment to other persons

or property; or (3) The offender unreasonably annoys people in the vicinity." A violation of either of these sections is a Class C misdemeanor. T.C.A. § 39–17–310(b); T.C.A. § 39–17–305(c).

Carruth testified that after he jumped from his uncle's truck and was running through an alley, he heard dogs barking. He stopped to catch his breath while in sight of his home when Baxter and another officer approached him. He stated that he "was out in public" at this time.

The record supports the ultimate arrest made by the officers as valid and we find no violation of Carruth's constitutional rights. We further find no material evidence to support the state law claims against the officers. We conclude that the trial court correctly directed a verdict in favor of the remaining Appellees.

The judgment of the trial court is affirmed. Costs are taxed to Edward L. Carruth, for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.

---

4. Carruth testified that he knew the officers could not arrest him in his home, even though the threat was made. Counsel for Appellees concedes this point also.