# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 17, 2012 Session  Heard at Memphis

## DIANE R. CANNON KELLON and WILLIAM T. KELLON  v. MARSHA LEE, M.D. and SEMMES-MURPHEY CLINIC

### Appeal from the Circuit Court for Shelby County
### No. 97419TD     Donna M. Fields, Judge

---

### No. W2011-00195-COA-R3-CV - Filed May 21, 2012

---

This is a medical malpractice case wherein a patient suffered permanent neurological impairment after delay of surgery to correct a ruptured disc in her spine. The patient sued the doctor who treated her at a minor medical clinic, and a neurological clinic, alleging that both failed to ensure that the patient was treated promptly. The jury found that the doctor did not breach the standard of care, but awarded damages against the neurological clinic. The neurological clinic moved for judgment in accordance with a motion for a directed verdict on the ground that the patient failed to prove causation. The trial court granted the motion, as well as a conditional motion for new trial as to the neurological clinic only. The trial court concurred in the jury verdict in favor of the doctor. We reverse the grant of the motion for judgment in accordance with a motion for a directed verdict and affirm the grant of a new trial as to the neurological clinic only. The jury verdict in favor of the minor medical clinic doctor, as concurred in by the trial court, is affirmed. Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

William R. Bruce and Duncan E. Ragsdale, Memphis, Tennessee, for the appellants, Diane R. Cannon Kellon and William T. Kellon.

David M. Cook and Albert G. McLean, Memphis, Tennessee, for the appellee, Marsha Lee, M.D.

Stephen W. Vescovo and Margaret Cooper, Memphis, Tennessee, for the appellee, Semmes-

Murphey Clinic.

## OPINION

### I. Background

On October 19, 1997, Plaintiff/Appellant Diane Kellon awoke with severe leg and back pain, accompanied by leg weakness. Nearly two years prior, Mrs. Kellon had been diagnosed with lumbar disc syndrome by a physician at Defendant/Appellant Semmes-Murphey Clinic ("SMC"). She had been prescribed pain medications, but her physician did not recommend surgery. Over the next two years, however, Mrs. Kellon was seen by physicians several times at Baptist Minor Medical Clinic[1] due to pain allegedly caused by her lumbar disc syndrome.

Mrs. Kellon returned to Baptist Minor Medical Clinic on the afternoon of October 19, 1997 with her husband William T. Kellon (with Mrs. Kellon, "Appellants"), where she informed her treating physician, Defendant/Appellee Dr. Marsha Lee, of her history with lumbar disc syndrome. Dr. Lee performed an examination, noting that Mrs. Kellon's gait was slow when walking into the office. Dr. Lee's exam notes for Mrs. Kellon's case do not mention anything about "foot drop," a "neurological deficit," nor do the notes indicate whether Dr. Lee checked Mrs. Kellon's reflexes during the exam. Neither Dr. Lee, nor Clinic Minor Medical, ordered an imaging study (e.g. a CT scan or MRI). However, during the appointment, Dr. Lee called SMC for guidance and, based on a conversation with Dr. John Robertson, who was the on-call doctor with SMC that day, Dr. Lee instructed Mrs. Kellon to rest and to call SMC the following morning, October 20, 1997, to obtain an appointment. In addition, Dr. Lee instructed Mrs. Kellon that, if her pain increased after leaving Baptist Minor Medical Clinic, she should go to the emergency room.

At approximately 8:20 a.m., on October 20, 1997, Mrs. Kellon attempted to obtain an appointment with SMC by calling its appointment desk. She spoke to a receptionist, who then forwarded her call to another nurse. The nurse informed Mrs. Kellon that her usual doctor had retired and that it would take approximately three weeks to get an appointment to see another doctor. According to Mrs. Kellon, she explained that a doctor with Baptist Minor Medical Clinic had called the on-call doctor the previous afternoon, and that the doctor had informed her that she needed to be seen by SMC on Monday, October 20th. The nurse took the information from Mrs. Kellon and informed her that she would return the call. Several hours passed with no return call from SMC. Mrs. Kellon called again around 10:30, but she

---

[1] Baptist Memorial Hospital d/b/a Baptist Minor Medical Clinic was originally a defendant in this case. However, the Appellants voluntarily dismissed both the hospital and the clinic on September 8, 2010.

was given the same response as before. Mrs. Kellon's husband then came home from work and again attempted to call SMC to obtain an appointment, but to no avail. Finally, on the afternoon of October 20, Mrs. Kellon remembered that she has a cousin who worked for a different location of SMC. She was able to call her cousin who set an appointment for Tuesday morning, October 21, 1997.

When Mrs. Kellon awoke on the morning of October 21, 1997, she testified that her weakness had increased and that she was unable to fully raise her foot from the ground, a condition known medically as "foot drop."[2] According to testimony from the treating physician, Claudio Feler, M.D., Mrs. Kellon told the physician that the foot drop had occurred the night prior to the appointment. Dr. Feller ordered a CT Scan, which showed a "huge . . . disc rupture." Due to Mrs. Kellon's statement that the foot drop had occurred the previous night, and based upon the massive disc rupture, Dr. Feler proceeded to emergency surgery that afternoon.

According to Mrs. Kellon, she suffered permanent neurological injury and physical impairment as a result of the disc rupture. In a post-operative appointment, Dr. Feler allegedly told Mrs. Kellon and her husband that, if Mrs. Kellon had received more prompt attention, her injury would "probably not have been as severe."

The Kellons filed a complaint against Dr. Lee and SMC on October 14, 1998.[3] The complaint alleged that Dr. Lee's conduct fell below the recognized standard of care when she failed to perform a proper physical exam and to immediately refer Mrs. Kellon to the emergency room for surgery on October 19, 1997. The claims against SMC also sounded in negligence. Specifically, the Kellons asserted at trial that SMC failed to have a proper protocol in place to ensure that Mrs. Kellon was seen promptly at its clinic and that SMC should be vicariously liable for the negligence of its employees in failing to promptly set an appointment for Mrs. Kellon.

From August 25, 2010 to September 8, 2010, the case was tried to a jury. At the close of their proof, the Appellants orally moved for a directed verdict, which was denied by the trial court from the bench. SMC also moved for a directed verdict, based on two grounds: 1) SMC could not be vicariously liable for the negligence of its employees because the statute of repose had run; and 2) Mrs. Kellon failed to meet her burden to show that SMC's failure

---

[2]The treating physician in this case defined "foot drop" as "when you've got weakness of the tibialis anterior muscle, which is the big muscle that goes down the front of your shin and makes your ankle go up."

[3] The Appellants in this case amended their complaint three times, adding and deleting defendants and allegations each time. The only defendants at issue on this appeal are Dr. Lee and SMC.

to have a proper procedure in place was the cause-in-fact of her injuries. The trial court orally granted the directed verdict as to the vicarious liability issue,[4] leaving to the jury only the allegation that SMC failed to have a proper protocol in place to ensure that Mrs. Kellon was seen on October 20, 1997. The trial court declined to rule on the causation issue until after the weekend. When court resumed, the trial court orally denied SMC's motion for a directed verdict.

On September 8, 2010, the jury returned a verdict in favor of Mrs. Kellon in the amount of $453,846.00, with her husband awarded an additional $87,153.00 for loss of consortium. The jury apportioned 49% fault to Mrs. Kellon and 51% fault to SMC. No liability was assessed to Dr. Lee, as Dr. Lee was found not to have breached the standard of care. SMC renewed its motion for a directed verdict, becoming a motion for judgment in accordance with a motion for a directed verdict. Immediately after trial, counsel for SMC spoke with jurors, who revealed the possibility of a quotient verdict.[5]

On September 21, 2010, the trial court entered an order on the jury verdict. On the same day, SMC filed a motion and memorandum in support of its motion for judgment in accordance with a motion for a directed verdict. SMC also filed a conditional motion for new trial, supplementing the motion with juror affidavits and arguing that a new trial should be granted because the verdict rendered by the jury was a quotient verdict.

The trial court granted the motion for judgment in accordance with a motion for a directed verdict on October 18, 2010. The court's decision was based on Mrs. Kellon's failure to meet her burden of proof as to causation. In the order, the trial court reserved ruling on SMC's conditional motion for a new trial, but specifically found that the jury had not rendered a quotient verdict.

Several post-trial motions were filed by the Appellants and these were denied by the trial court on January 24, 2011.[6] On the same day, the trial court granted SMC's conditional

---

[4] Appellants do not take issue with this ruling on appeal.

[5] A quotient verdict occurs "[w]hen a jury agrees in advance to be bound by a verdict reached through an averaging process." Our Supreme Court has opined that "[a] verdict arrived at by averaging various figures is not, in and of itself, illegal. It is only when there is an antecedent agreement, express or implied, to abide by the results that a quotient verdict will be vitiated." ***Odom v. Gray***, 508 S.W.2d 526, 532 (Tenn. 1974).

[6] These motions included a motion for addittur, to set aside the grant of judgment in accordance with the motion for a directed verdict, to reconsider the grant of judgment in accordance with the motion for a

(continued...)

motion for new trial, in the event that this Court overturned the grant of judgment in accordance with a motion for a directed verdict. The order provided that, in its role as thirteenth juror, the trial court believed that the jury's verdict was contrary to the weight of the evidence. The conditional new trial would only apply to SMC because the trial court agreed with the jury's verdict regarding Dr. Lee. The Appellants appeal.[7]

## II. Issues Presented

1.  Whether the trial court erred in granting SMC's Motion for Judgment in Accordance with the Motion for a Directed Verdict?
2.  Whether the trial court erred in granting SMC's Conditional Motion for New Trial premised on the court's granting of the Motion for Judgment in Accordance with the Motion for a Directed Verdict?
3.  Whether the trial court erred in finding that a quotient verdict as to damages did not exist and should a new trial as to damages be granted?

## III. Analysis

### A. Motion for Judgment in Accordance with Motion for a Directed Verdict

Appellants first argue that the trial court erred in granting the motion for judgment in accordance with the motion for a directed verdict. Our review of a trial court's decision regarding a post-trial motion for entry of judgment in accordance with a motion for a directed verdict is gauged by the standard applicable to motions for a directed verdict. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). Directed verdicts are appropriate only when reasonable minds cannot differ as to the conclusions to be drawn from the evidence. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Ingram v. Earthman*, 993 S.W.2d 611, 627 (Tenn. Ct. App.1998). A case should not be taken away from the jury, even when the facts are undisputed, if reasonable persons could draw different conclusions from the facts. *Gulf, M. & O.R. Co. v. Underwood*, 182 Tenn. 467, 474, 187 S.W.2d 777, 779 (1945); *Hurley v. Tenn. Farmers*

---

[6](...continued)
directed verdict, and two motions for new trial.

[7] The record on appeal was filed with the clerk of this court on August 16, 2011. Upon review of the record, this court determined that the order appealed did not appear to be a final judgment. Accordingly, on August 17, 2011, this Court ordered the Appellants to obtain a final judgment in the trial court within ten days or show cause why this appeal should not be dismissed. The Appellants obtained a final order and timely supplemented the record on appeal. It now appearing that the order appealed is final, this Court has jurisdiction to consider this appeal.

*Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

In appeals from a directed verdict, reviewing courts do not weigh the evidence, *Conatser v. Clarksville Coca–Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638–39 (Tenn. Ct. App. 1993). Instead, they review the evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d at 271; *Eaton v. McLain*, 891 S.W.2d at 590; *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999).

To avoid a directed verdict or a motion for judgment in accordance with a motion for a directed verdict, "the non-moving party must present some evidence on every element of its case—enough evidence to establish at least a *prima facie* case." *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000) (citing *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 818 (Tenn. Ct. App. 1995)). Normally, a directed verdict is proper only where no material evidence exists on one or more elements that the non-moving party must prove. *See generally Conatser v. Clarksville Coca–Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995).

The *prima facie* case in a medical malpractice action is set out in the Tennessee Medical Malpractice Act, which states, in pertinent part:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115. Accordingly, the plaintiff must include, in his or her evidence, a *prima facie* showing of duty, breach of duty and causation; a failure to do so will subject him or her to a motion for judgment in accordance with a motion for a directed verdict. ***Benson v. H.G. Hill Stores***, Inc., 699 S.W.2d 560, 562 (Tenn. Ct. App. 1985). However, this initial burden differs from the ultimate burden in that it does not require a preponderance of evidence, ***Id.***, but only requires "***any*** material evidence in the record to support a verdict for the plaintiff under any of his [or her] alleged theories." ***City of Bartlett v. Sanders***, 832 S.W.2d 546, 549 (Tenn. Ct. App. 1991) (emphasis added).

The critical issue in this appeal is whether the Appellants have failed, as a matter of law, to establish the existence of causation, i.e., that the purported medical malpractice actually caused the harm complained of. "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." ***Kilpatrick v. Bryant***, 868 S.W.2d 594, 598 (Tenn. 1993) (citing ***Caldwell v. Ford Motor Co.***, 619 S.W.2d 534, 543 (Tenn. Ct. App. 1981); ***Wyatt v. Winnebago Industries, Inc.***, 566 S.W.2d 276, 280 (Tenn. Ct. App. 1977)). As discussed by our Supreme Court:

Th[e] question [of causation] dominates because the rule requiring causation be proven by a preponderance of the evidence dictates that Plaintiffs demonstrate that the negligence more likely than not caused the injury. ***Lindsey v. Miami Dev. Corp.***, 689 S.W.2d 856, 861 (Tenn.1985) ("[p]laintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."). To be sure, the mere occurrence of an injury does not prove negligence, and an

admittedly negligent act does not necessarily entail liability. ***Doe***
[***v. Linder Const. Co., Inc.***], 845 S.W.2d [173,] 181 [(Tenn.
1992)]. Even when it is shown that the defendant breached a
duty of care owed to the plaintiff, the plaintiff must still
establish the requisite causal connection between the defendant's
conduct and the plaintiff's injury. ***Id.*** ("Proof of negligence
without proof of causation is nothing").

***Kilpatrick***, 868 S.W.2d at 598–99. Expert testimony is required to establish causation in
medical malpractice cases, except where the act of alleged malpractice lies within the
knowledge of ordinary laymen. ***Kenyon v. Handal***, 122 S.W.3d 743, 758 (Tenn. Ct. App.
2003); ***Mercer v. HCA Health Services of Tennessee***, 87 S.W.3d 500, 507 (Tenn. Ct. App.
2002); *see also* Tenn. Code Ann. §29-26-115. Additionally, "[c]ausation in fact is a matter
of probability and not possibility, and must be shown to a reasonable degree of medical
certainty." ***White v. Vanderbilt University***, 21 S.W.3d 215, 232 (Tenn. Ct. App. 1999).
Accordingly, in order to survive the Appellee's motion for judgment in accordance with a
motion for a directed verdict, the Appellants must have presented expert testimony, given to
a reasonable degree of medical certainty, that SMC's breach of duty was more likely than not
the cause in fact of Mrs. Kellon's injuries.

Appellants first argue that comments made by the trial court demonstrate a
misinterpretation of the standard of proof required to show causation, as well as an improper
weighing of the evidence in considering SMC's motion for judgment in accordance with a
motion for a directed verdict. Indeed, during SMC's oral motion for a directed verdict, the
trial court cautioned counsel for the Appellants that "You need to ban probable from your
vocabulary. . . . Probable doesn't help you. . . . Because that's not the test." Contrary to the
trial court's statement, the term "probable" is sufficient to establish the *prima facie* element
of causation. ***White v. Vanderbilt University***, 21 S.W.3d 215, 232 (Tenn. Ct. App. 1999)
(requiring that expert testimony show a "probability" rather than a possibility); *see also*
***Stovall v. Clarke***, 113 S.W.3d 715, 724 (Tenn. 2003) (concluding that expert testimony that
had the defendant doctor complied with the standard of care, the plaintiff "***probably*** [would]
have undergone successful medical and or surgical management of his heart problem" was
sufficient evidence of causation to survive summary judgment") (emphasis added). In
addition, in considering the motion for a directed verdict, the trial court stated, "I'm saying
we need to look at both sides of the coin." However, as previously discussed, during a motion
for a directed verdict, or a motion for judgment in accordance with a motion for a directed
verdict, the court is constrained to consider the evidence in the light most favorable to the
motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and
disregard all evidence contrary to that party's position. Accordingly, the trial court's comment
that we must look to "both sides of the coin" was an incorrect statement of the law. However,

even with these misstatements by the trial court, the burden remains on the Appellants to present expert testimony, given to a reasonable degree of medical certainty, that SMC's breach of duty was more likely than not the cause in fact of Mrs. Kellon's injuries. Accordingly, if there is no such evidence in the record, the misstatements by the trial court were harmless. *See In re London V.P.*, No. E2010-02650-COA-R3PT, 2011 WL 4477997, (Tenn. Ct. App. Sept. 9, 2011) (noting that a misstatement by the trial judge that does not effect the outcome of the case is harmless error). Therefore, we turn to consider the evidence presented at trial.

Appellants argue that Dr. Feler's alleged out-of-court statement that, had Mrs. Kellon received "more prompt" attention, her injuries would "probably not have been as severe" is sufficient to establish causation in this case.[8] We disagree. Even assuming that this statement was admissible as an exception to the hearsay rule,[9] this testimony is, nonetheless, insufficient to establish the necessary element of causation. The Medical Malpractice Act makes clear that each element of a medical malpractice action must be established by expert medical testimony. *See* Tenn. Code Ann. §29-26-115; *see also Kenyon*, 122 S.W.3d at 758. In addition, it is well-settled that causation testimony from an expert must be to a reasonable degree of medical certainty. *See Vanderbilt*, 21 S.W.3d at 232. The question of whether testimony is based on a reasonable degree of medical certainty is a question law, which is decided by the court rather than the jury. *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d

---

[8] We note that Mrs. Kellon testified that Dr. Feler stated that "had [Mrs. Kellon] received more prompt attention, . . . my injury *probably* would not have been as severe." (emphasis added). However, according to Mr. Kellon, Dr. Feler stated that "had [Mrs. Kellon] gotten attention earlier, that she *may* not have had foot drop." (emphasis added). The Tennessee Supreme Court in *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993), has stated:

> [P]roof of causation equating to a "possibility," a "might have," "*may have*," "could have," is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence in a medical malpractice case. Causation in fact is a matter of probability, not possibility . . . .

*Id.* at 602 (emphasis added) (citing *White v. Methodist Hosp. South*, 844 S.W.2d 642, 648–49 (Tenn. Ct. App. 1992)). Accordingly, Mr. Kellon's version of Dr. Feler's statement is insufficient to establish causation under *Kilpatrick*.

[9] It is undisputed that the above statement by Dr. Feler constitutes hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Appellants argued at trial, however, that the statement constituted an admission by a party opponent. Tenn. R. Evid. 803(1.2). However, because the determination of whether this statement is properly admissible is not dispositive of this appeal, nor was this issue specifically raised in the briefs of either party, we decline to address this issue.

897 (Tenn. Ct. App. 2001). As this Court explained:

> [T]he requirement that expert testimony on causation be "reasonably certain" embodies a correct principle of law. . . . That an expert's testimony is "reasonably certain" is said to be a prerequisite to the admissibility of that testimony. *See **Lindsey** [**v. Miami Dev. Corp.**]*, 689 S.W.2d [856,] 862 [(Tenn. 1985)]. The admissibility of expert testimony is a matter of law for the court, not the jury. *See **McDaniel v. CSX Transp., Inc.***, 955 S.W.2d 257, 263 (Tenn. 1997).

*Id.* at 906. This statement was made out of court and there is no indication that Dr. Feler held this opinion to a reasonable degree of medical certainty.[10] This Court has previously held that the terms "reasonable degree of medical certainty" and "more probably than not" are not synonymous. ***Bara v. Clarksville Memorial Health Systems, Inc.***, 104 S.W.3d 1, 10 (Tenn. Ct. App. 2002) ("Unless one can, as a matter of every day common sense, say that "reasonable degree of medical certainty" and "more probably than not" are synonymous terms, the instructions in this case are inconsistent and contradictory and misleading to the jury."). Therefore, even though this testimony meets the ***Kilpatrick*** requirement that the evidence present a probability that the injury was caused by the Appellees, rather than a mere possibility, the evidence lacks the reasonable degree of medical certainty requirement. *See **Kilpatrick v. Bryant***, 868 S.W.2d 594, 602 (Tenn. 1993) ("The plaintiff need not negat[e] entirely the possibility that the defendant's conduct was not a cause and it is enough to introduce evidence from which reasonable persons may conclude that it is ***more probable*** that the event was caused by the defendant than that it was not."). Without some indication that Dr. Feler held this opinion to a reasonable degree of medical certainty, this out-of-court statement is inadmissible for the purpose of establishing the *prima facie* element of causation, regardless of whether it was properly or improperly admitted as an exception to the hearsay rule.[11] *See **Bara***, 104 S.W.3d at 10 ("Thus, if the doctor cannot testify as to cause in fact to a reasonable degree of medical certainty, his testimony is not admissible before the jury and if there is no other expert evidence of causation in fact in a medical malpractice case, summary judgment would be proper.").

We next consider the evidence presented at trial. The first relevant testimony

---

[10]Although Dr. Feler was deposed in this case, counsel for the Appellants did not ask him about this alleged statement, nor did they inquire as to whether Dr. Feler held this opinion to a reasonable degree of medical certainty.

[11] We take no position as to whether this statement may be admissible for other purposes.

presented to the jury was from Dr. Anthony Segal, a neurosurgical expert retained on behalf of Dr. Lee.[12] On cross-examination by Appellants' counsel, Dr. Segal testified by video deposition as follows:

Q. Now, your understanding of Dr. Robertson's and Dr. Lee's conclusion about what should happen in this case was included in the fact that Ms. Kellon should have been seen on the 20th at [SMC]?

A. Those were the arrangements made and I agree those were the correct thing to do. Certainly Dr. Robertson wanted her to be seen on the 20th and she was not seen. It strikes me something happened—something didn't happen that should have happened, but I haven't looked into it any further. As I said, I was not asked to do that and I'm not testifying about that.

\* \* \*

Q. Do you have an opinion based on a reasonable degree of medical certainty whether . . . she does have permanent injury of the nerve root?

A. Yes. She does.

\* \* \*

Q. So you don't have any question that on the morning of the 19th, she had a disc fragment compressing the nerve root that ultimately on the evening, the night of the 20th, resulted in foot drop?

A. Correct.

\* \* \*

Q. And that condition went on long enough that there's

---

[12] Due to various complications regarding the expert witnesses, the evidence in this case was taken out of order. Accordingly, Dr. Segal's video deposition was shown to the jury before the Appellants closed their case-in-chief.

permanent and irreversible nerve damage to that axon to that nerve?

A. Correct.

* * *

Q. All right. And that intervention sometime between the morning of the 19th and the foot drop on the evening of the 20th would probably have prevented the permanent nerve damage?

A. If she didn't have foot drop before surgery, then we're assuming she's not going to get it after surgery. It would have stopped it happening.

Q. Is that based on—is that what's probable based on a reasonable degree of medical certainty.

A. Medical certainty that if she didn't have a symptom, you would stop it occurring by fixing the problem. . . . But reading the future is not easy in medicine.

Q. But what we're asking you to testify today is based on what's reasonable, based on your experience and training and knowledge of 30 years and doing this and seeing hundreds and hundreds of patients.

A. Yes.

Q. All right. And so had Mrs. Kellon had that disc removed on the 20th before she developed the foot drop . . . do you have an opinion based on a reasonable degree of medical certainty whether she would have had a permanent injury?

A. She would not have had a permanent foot drop because she didn't have any at the time of the surgery.

Q. Under that scenario?

A. Under that scenario. But I must say that I've never seen any indication for surgery which included we must do something to

-12-

prevent a symptom that hasn't occurred yet in a disc. You wouldn't do that. Otherwise, you would operate on everybody who got leg pain to prevent a further neurological deficit.

SMC's brief focuses on Dr. Segal's statement that intervention "sometime between the morning of the 19[th] and the foot drop on the evening of the 20[th]" and argues that such statement is inconclusive. According to SMC's brief, Dr. Segal's testimony merely shows that "Ms. Kellon could have had surgery at any time in her life prior to the evening of October 20, 1997, and this surgery would have prevented her from having developed foot drop, because intervention would prevent a symptom that had not yet occurred." SMC points out that the only relevant period for SMC's breach of duty occurred on Monday, October 20, 1997. However, SMC ignores the remainder of Dr. Segal's testimony, in which counsel for Appellants asked the very specific question: "had Mrs. Kellon had that disc removed on the 20[th] before she developed the foot drop," would that intervention have prevented her permanent injury?[13] Dr. Segal testified in the affirmative. Accordingly, this testimony goes directly to the relevant time period to establish a causal link between SMC's breach of duty and Mrs. Kellon's permanent foot drop.

SMC argues, however, that Dr. Segal went onto explain that, in his experience, no doctor would operate to prevent a symptom (i.e., foot drop), before that symptom occurred. Therefore, SMC argues that Mrs. Kellon failed to establish that she would have had surgery on the same day, even if she was seen by SMC on October 20, 1997. However, the standard of review for a motion for judgment in accordance with a motion for a directed verdict requires us to "construe all evidence in favor of the nonmoving party and disregard all countervailing evidence." *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). Accordingly, we are required to consider only the evidence in favor of establishing causation as to SMC and are required to disregard all evidence that does not support that conclusion. This Court has previously considered the directed verdict standard when faced with conflicting evidence from the same expert witness. In *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897 (Tenn. Ct. App. 2001), this Court stated:

[W]e have before us expert testimony that tends to establish causation on the one hand, and other testimony by the same

_____

[13] SMC's brief quotes a portion of the above testimony from Dr. Segal's video deposition. However, without any indication of an omission, SMC omits Appellants' counsel's question regarding whether surgery specifically on the 20th would have prevented Mrs. Kellon's permanent injury. The Tennessee Rules of Professional Conduct provide that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal." Tenn. R. Sup. Ct. 8, RPC 3.3(a). We do not imply that this testimony was intentionally misstated in SMC's brief, but we caution all attorneys to be diligent in the preparation of their appellate briefs in the future.

experts that tends to diminish the effect of their causation testimony. In our judgment, the latter testimony goes to the weight to be given the former testimony. We believe it was for the jury to sort all of this out.

It is unreasonable to expect a medical expert to testify with legal precision. This is not to say that his or her testimony does not have to meet a certain standard; clearly . . . it does. But such testimony must be viewed as the testimony of a medical person and not that of an individual trained in the law. We are expecting too much if we think that doctors can speak with the precision of a hornbook on causation.

*Id.* at 905.

Likewise, in this case, Dr. Segal's testimony first tends to establish causation, then tends to weaken that testimony. However, given the minimal evidentiary requirements presented in review of motions for judgment in accordance with motions for a directed verdict, we must conclude that this testimony presented sufficient evidence of causation to submit to a jury.

Other testimony in the record also goes to causation. As is relevant to this appeal Dr. Edward Morgan, a medical expert, testified:

[A]ny time you have pressure on a nerve that's causing what we call progressive neurological symptoms, then it needs to be dealt with emergently, in which case the sooner you operate and get that pressure off, the better chance you have of recovering. The longer you let it go, your recovery lessens.

In addition, another expert, Dr. George Long, testified as follows:

Q. Do you have any opinions that [SMC] fell below the standard of practice on the 20th?

A. Yes.

Q. And did that delay getting surgery, in your opinion?

A. Yes.

Q. And had the surgery been done sooner than it was, do you think that there would have been a different outcome?

A. Very probably.

SMC argues, however, that these experts were emergency room doctors with expertise and qualifications to testify only as to Dr. Lee's alleged negligence. We note that the Appellees did not object to these specific questions during the trial,[14] nor was the admission of this testimony designated as an issue on appeal. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) (noting that an issue is waived if not designated as an issue on appeal). Further, on an appeal from the grant of a motion for judgment in accordance with a motion for a directed verdict, "appellate courts do not resolve disputes in the evidence." *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 647, 647 (Tenn. 1995). Because this evidence was admitted in the trial, and the admission has not been questioned on appeal, we must consider this evidence properly admitted.  At this point, the question becomes the "weight to be given" to the testimony and the "resolution of legitimate but competing . . . views, [which] are matters appropriately entrusted to the trier of fact." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn.1997) (citation omitted). On appeal from a motion for judgment in accordance with a motion for a directed verdict, however, this Court must not weigh the evidence or evaluate the credibility of witnesses. *Conatser*, 920 S.W.2d at 647; *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638–39 (Tenn. Ct. App. 1993). As we are required to give the Appellants in this case the "benefit of all reasonable inferences," *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999), we conclude that the above testimony establishes an issue of causation that is properly entrusted to the jury. "Weak or strong, [the above expert] testimony at least created a jury question on causation," and therefore the trial court erred in granting the motion for judgment in accordance with a motion for a directed verdict. *Richardson v. Miller*, 44 S.W.3d 1, 31 (Tenn. Ct. App. 2000). Accordingly, the motion for judgment in accordance with a directed verdict is reversed.

---

[14] SMC did object to previous questions directed toward both Dr. Morgan and Dr. Long concerning causation with regard to SMC. However, SMC offered no specific objections to the above statements by either Dr. Morgan or Dr. Long. In addition, the trial court specifically ruled that Dr. Morgan could testify as to causation because counsel for SMC asked causation questions of Dr. Long on cross-examination. *See* Cohen *e. al.*, *Tennessee Law on Evidence* § 611[6][a] (5th ed. 2005) (noting that the defendant may open the door to otherwise inadmissible testimony on cross-examination, allowing clarification on redirect); *see also* *United States v. Walker*, 421 F.2d 1298, 1299–1300 (3d Cir. 1970) (stating that a defendant can, "by cross-examination of a witness[,] . . . open the door for the admission on redirect examination of matters tending to support the case, which would not have been admissible on the case in chief"). SMC does not take issue with this ruling on appeal.

**B. New Trial as to SMC**

Appellants next argue that the trial court erred in granting a conditional motion for new trial based on the motion for judgment in accordance with a motion for a directed verdict. The Appellants point to the transcript of the hearing, noting that the trial court stated that it was granting the motion for new trial based on the grant of the motion for judgment in accordance with a motion for a directed verdict. The Appellants argue that this was error and request that the jury verdict be reinstated. We disagree. First, the proper procedure for granting a motion for judgement in accordance with a motion for a directed verdict is to also conditionally grant a new trial. Rule 50.03 of the Tennessee Rules of Civil Procedure, states, in pertinent part:

> If the motion for judgment entered in accordance with a motion for a directed verdict, provided for in 50.02, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. If the motion for a new trial is thus conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.

This requirement is explained in *Tennessee Circuit Court Practice:*

> If the court grants the motion, it should also grant or deny a new trial. If the trial court fails to address this question and its judgment entered in accordance with a motion for directed verdict is reversed because of an error of law, the appellate court cannot reinstate the verdict because the trial court has not acted on the verdict as a thirteenth juror and approved it. In such a case, remand would be necessary. The granting of a motion for new trial here is conditional and has no immediate effect on the judgment.

Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 28:6 (2011–12 ed.). As such, the trial court followed proper procedure in granting the conditional motion for new trial.

Even if the trial court were not authorized by Rule 50.03 to grant a new trial based on

a motion for judgment in accordance with a motion for a directed verdict, the trial court's order states that the court "finds, acting as thirteenth juror, that the jury's verdict was contrary to the weight of the evidence and grants the Conditional Motion for New Trial as to [SMC], only." It is well-settled that the court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). Therefore, based on the trial court's order, the court was acting under its authority as thirteenth juror to grant a new trial, after finding that the jury's verdict was contrary to the weight of the evidence. *See* Tenn. Rule Civ. P. 59.07 (noting that "[a] new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury" when the trial court finds that the verdict is contrary to the weight of the evidence).

*Tennessee Circuit Court Practice* explains the procedure when an appellate court reviews the grant of a conditional motion for new trial:

> If a new trial is conditionally granted and, on appeal, the judgment entered in accordance with a motion for directed verdict is reversed, the appellate court may order that a new trial proceed or it may order that the jury's verdict be reinstated. The former is preferable and most common and only under extraordinary circumstances and in the interests of justice, e.g. circumstances indicating that the trial court has abused its discretion or where the trial judge has erred in its interpretation or application of the law to the facts found by the jury, will the jury's verdict be reinstated.

Pivnick, *Tennessee Circuit Court Practice* § 28:6; *see also* **Loeffler v. Kjellgren**, 884 S.W.2d 463, 468 (Tenn. Ct. App. 1994) (noting that a trial court is given wide latitude in granting a motion for a new trial as the thirteenth juror, and appellate courts will not overturn such decision unless there has been an abuse of discretion). Given the trial court's misgivings over the causation testimony in this case, and considering the entire record, we discern no abuse of discretion in the trial court's decision to grant SMC a new trial. Accordingly the grant of the motion for a new trial as to SMC is affirmed. Any issue of a quotient verdict with regard to SMC is pretermitted.

### C. New Trial as to Dr. Lee

The Appellants do not raise as an issue in this case the trial court's decision to exclude Dr. Lee from the new trial. Dr. Lee argues that this Court should likewise exclude her from a new trial and reinstate the jury's finding that she did not breach the standard of care and that she was not at fault for Mrs. Kellon's injuries. We note that the general rule requires this

Court to remand for a new trial as to all defendants when a motion for a directed verdict (or a motion for judgment in accordance with a motion for a directed verdict) is reversed on appeal. As our Supreme Court stated in ***Holmes v. Wilson***, 551 S.W.2d 682 (Tenn. 1977):

> [W]e believe the correct rule to be that in those cases wherein the trial court has granted judgment [in accordance with a motion for a directed verdict] and has conditionally granted a new trial the appellate court, upon reversal of the judgment [in accordance with a motion for a directed verdict], should, as a general rule, remand the action for a new trial. Appellate courts, however, may exercise a sound judicial discretion in the matter and may, under exceptional circumstances and in the interest of justice, reinstate the verdict of the jury where the trial judge erred in ruling on a controlling conclusion of law and has approved the verdict of the jury.

***Id.*** at 687*; see also* Pivnick, *Tennessee Circuit Court Practice* § 28:6 (only under extraordinary circumstances and in the interests of justice . . . will the jury's verdict be reinstated"). However, this Court previously dealt with a similar issue in ***Lee v. Melson***, 387 S.W.2d 838 (Tenn. Ct. App. 1965), stating:

> The modern trend . . . is to recognize the discretionary power of the trial court to limit the issues on the second trial and to grant a new trial as to one party but not as to others against whom a verdict untainted by error or illegality has been returned.
>
> \* \* \*
>
> The guiding principle is fairness to both parties. A verdict tainted with error or confusion ought not to stand. On the other hand, the parties are entitled to only one day in court. Once a party has been accorded a fair trial on the merits, unaffected by errors of law, he is not entitled to another trial merely because another party to the suit has been granted a new trial to reverse an error peculiar to him.

***Id.*** at 840–41. Likewise, in ***Huskey v. Crisp***, 865 S.W.2d 451 (Tenn. 1993), the trial court set aside the jury verdict, but expressly denied a conditional motion for new trial. ***Id.*** at 455. This Court reversed the trial court's order setting aside the judgment, and remanded to the trial court for a new trial. Our Supreme Court affirmed this Court's determination that the

-18-

trial court erred in setting aside the verdict. *Id.* However, the Supreme Court held that the Court of Appeals erred in remanding the case for a new trial (holding that the case was not controlled by *Holmes*), and reinstated the jury's verdict. *Id.* (noting that "it is evident that *Holmes* does not control this situation because . . . the trial court expressly denied [appellants'] motion for a new trial"). The controlling factor in the Supreme Court's decision to reinstate the jury verdict in *Huskey* was the fact that the trial court expressly denied the motion for new trial, which decision amounted to an extraordinary circumstance warranting reinstatement of the original jury verdict. *See also Usher v. Charles Blalock & Sons, Inc.*, 339 S.W.3d 45, 66–67 (Tenn. Ct. App. 2010) ("*Huskey* conformed exactly to the example of exceptional circumstances given in *Holmes* . . . . In *Huskey*, it was important that the trial court "expressly denied ... [the] motion for a new trial."). In this case, the trial court's order granting a new trial to SMC, states, in pertinent part:

> The Court further finds that it agrees with the jury verdict in favor of Marsha Lee, M.D., and specifically finds that the conditional new trial granted to Semmes-Murphey Clinic herein, shall not include Marsha Lee, M.D., and that no new trial is granted as to Marsha Lee, M.D.

Based on the express language of the above order, the trial court has "acted on the verdict as a thirteenth juror and approved it[,]" Pivnick, *Tennessee Circuit Court Practice* § 28:6, and has expressly denied a new trial with regard to Dr. Lee. Accordingly, extraordinary circumstances require this Court to affirm the jury verdict, as concurred in by the trial court, with regard to Dr. Lee.[15]

### IV. Conclusion

The judgment of the Circuit Court of Shelby County is reversed in part, and affirmed in part, and this cause is remanded to the trial court for a new trial as to Appellee, Semmes-Murphey Clinic. The jury verdict as to Appellee, Marsha Lee, M.D. is affirmed. All issues not specifically ruled on are pretermitted. Costs of this appeal are assessed one-half to Appellants, Diane Kellon and William T. Kellon, and their surety, and one-half to Appellee Semmes-Murphey Clinic, for all of which execution may issue if necessary.

---

[15] With regard to the Appellants' issue that the jury engaged in an impermissible quotient verdict, we note that at trial counsel for the Appellants stated that "My argument was that it was a quotient verdict, and it should be overturned—but as to damages, and since the jury went ahead and found in favor of Dr. Lee, *it was a good verdict in that regard regarding Dr. Lee.*" Indeed, the Appellants do not argue in their brief that a new trial solely as to damages would also apply to Dr. Lee, presumably because Dr. Lee was not found at fault by the jury and, as such there can be no damages to assess against her. Accordingly, this Court need not consider whether the jury's verdict was an impermissible quotient verdict with regard to Dr. Lee.

_____

J. STEVEN STAFFORD, JUDGE